UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BYBEE FARMS, LLC, et al.,

          Plaintiffs,

        v.

SNAKE RIVER SUGAR COMPANY, et
al.,

         Defendants.

No. CV-06-5007-FVS

ORDER GRANTING RALPH BURTON'S
MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** came before the Court based upon Ralph Burton's motion for summary judgment.  He was represented by J. Walter Sinclair.  The plaintiffs were represented by Thomas Banducci.

**BACKGROUND**

Ralph Burton was the president of the Snake River Sugar Company ("SRSC") from 2002 until 2006.  The SRSC is an agricultural cooperative that was organized under the law of the State of Oregon. The SRSC is governed by a board of directors, which has delegated some of its authority to an executive committee.

Members of the SRSC own shares of the cooperative's stock.  Each share of stock represents a commitment on the owner's part to plant a certain number of acres of sugar beets each year and deliver a certain quantity of sugar beets to the SRSC.  SRSC members are located in several states.  A number grow sugar beets in the State of Washington. At least some (and perhaps all) of the SRSC's Washington members are partners of Sunheaven Farms.  Although Sunheaven Farms and the SRSC

ORDER - 1

are separate business organizations, they have at least one thing in common.  The manager of Sunheaven Farms, David Walker, also sits on the SRSC's board of directors.

By 2004, the SRSC's members were growing more sugar beets than the cooperative could sell profitably.  The SRSC wanted to cut production.  For a variety of reasons, Mr. Burton thought that the most sensible solution was to persuade the partners of Sunheaven Farms (*i.e.*, the Washington growers) to sell their shares and cease growing sugar beets.  During December of 2004, Mr. Walker arranged for Mr. Burton to meet with the partners.  The meeting occurred in Prosser, Washington, on January 5, 2005.  Mr. Burton allegedly pressured them to sell their shares and cease growing sugar beets.

The Sunheaven Farms partners knew that Mr. Burton had significant influence with the directors.  He was, in the words of Mr. Walker, "someone that could get things done."  The partners assumed that his proposal had the tacit, if not the express, approval of the executive committee.  Consequently, on January 17th, they submitted a memorandum to the executive committee that set forth terms upon which each was willing to sell his shares in the SRSC.  The terms varied from partner to partner.  However, each partner wanted at least $1,000.00 per share.

On January 24th, Mr. Burton sent a three-paragraph email to Mr. Walker in which he alluded to the growers' respective offers.  The last paragraph of Mr. Burton's email states, "I don't have anything definitive and may not for a while.  This of course argues that this may be a next year deal."  Mr. Walker printed the email and jotted a note on it before providing copies to the partners of Sunheaven Farms. "Thought you might be interested in Ralph's comments," he advised the

ORDER – 2

partners.  "Getting $1,000 per share will not be slam dunk."

On February 17th, the executive committee held a meeting by means of a telephone conference call.  Participants discussed the offers made by the Sunheaven Farms partners and decided they were unacceptable.  Although Mr. Burton participated in the call and was aware of the executive committee's decision, he did not inform the Sunheaven Farms partners that their offers had been rejected.[1]  It is not entirely clear why he remained silent.  The plaintiffs speculate that, despite the executive committee's negative decision, he still hoped to reduce sugar beet production by persuading the SRSC to purchase the shares that were held by the partners of the Sunheaven Farms (i.e., the Washington growers).  According to the plaintiffs, he feared that the Sunheaven Farms partners would plant sugar beets if they learned that their respective offers had been rejected.

As it turned out, some of the Washington growers planted sugar beets during the Spring of 2005.  However, Bybee Farms, LLC, and Duane Munn & Sons Farms, LLC, did not.  According to them, the SRSC is threatening to impose financial sanctions against them -- up to and including the forfeiture of their shares -- as a result of their failure to grow sugar beets during 2005.  They have filed an action against the SRSC, Ralph Burton, and one other company.  The plaintiffs' complaint lists nine causes of action.  Mr. Burton is named in the fifth (breach of fiduciary duty) and the sixth (negligent misrepresentation).  The Court has jurisdiction over these two claims based upon diversity of citizenship.  28 U.S.C. § 1332.  Mr. Burton

---

[1]There is no evidence that Mr. Walker, the manager of Sunheaven Farms, sat on the executive committee.

ORDER - 3

moves for summary judgment.[2]

**CHOICE-OF-LAW RULES**

The parties agree that the substantive law of the State of Oregon governs the plaintiffs' breach-of-fiduciary-duty claim.  They disagree with respect to whether Oregon law also governs the plaintiffs' negligent-misrepresentation claim.  Since jurisdiction over both claims rests principally upon diversity of citizenship, the parties' disagreement must be resolved pursuant to the State of Washington's choice-of-law rules.  *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir.1999) (citations omitted).

**BREACH OF FIDUCIARY DUTY**

The Supreme Court of the State of Washington uses the "most significant relationship test" set forth in the Restatement (Second) of Conflict of Laws (1971) for resolving choice-of-law disputes involving both contract claims, *Mulcahy v. Farmers Insurance Co.*, 152 Wn.2d 92, 100-01, 95 P.3d 313 (2004) (Restatement, *supra*, § 188), and tort claims.  *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 213, 875 P.2d 1213 (1994) (Restatement, *supra*, § 145).  The plaintiffs' breach-of-fiduciary-duty claim does not fall within the scope of either § 145 or § 188.  Instead, it involves the relationship between minority shareholders and a senior executive officer in the SRSC.  As such, the plaintiffs' breach-of-fiduciary-duty claim falls within the scope of § 302.  This section is concerned with "the 'internal affairs' of a corporation -- that is the relations inter se of the corporation, its

---

[2]The other two plaintiffs are Neal Bybee and Columbia Basin Pellets, LLC.  Neal Bybee has transferred his shares in the SRSC to other growers.  Columbia Basin Pellets, LLC, is not asserting a claim against Mr. Burton.

ORDER - 4

shareholders, directors, officers or agents[.]" Restatement, *supra*, §
302, comment a.[3]   To date, the Washington Supreme Court has not
adopted § 302.   Thus, the applicability of § 302 is an unresolved
issue of state law.   When, in a diversity case, a federal court is
presented with an issue of state law that is unresolved, the federal
court must determine how the state's highest court is likely to rule
when confronted with the issue.   *Dias v. Elique*, 436 F.3d 1125, 1129
(9th Cir.2006); *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323
F.3d 1219, 1222 (9th Cir.2003).   In making that assessment, a federal
court may rely upon "intermediate appellate court decisions, statutes,
and decisions from other jurisdictions[.]"   323 F.3d at 1222.

   Section 302 provides that "the law of the state of incorporation
normally determines issues relating to the *internal* affairs of a
corporation."   *First Nat. City Bank v. Banco Para El Comercio Exterior
de Cuba*, 462 U.S. 611, 621, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983)
("*Bancec*") (emphasis in original).   Applying the incorporating state's

---

[3]Section 302 states:

>    (1) Issues involving the rights and liabilities of
> a corporation . . . are determined by the local law of
> the state which, with respect to the particular issue,
> has the most significant relationship to the occurrence
> and the parties under the principles stated in § 6.
>    (2) *The local law of the state of incorporation
> will be applied to determine such issues*, except in the
> unusual case where, with respect to the particular
> issue, some other state has a more significant
> relationship to the occurrence and the parties, in
> which event the local law of the other state will be
> applied.

(Emphasis added.)

ORDER - 5

law "achieves the need for certainty and predictability of result
while generally protecting the justified expectations of parties with
interests in the corporation." *Id.* Given the rationale for the rule
and its widespread acceptance, the Washington Supreme Court likely
will adopt § 302 when the occasion arises. Assuming it does so, the
state Supreme Court also is likely to hold that a claim for breach of
fiduciary duty implicates the internal affairs of a corporation and,
thus, is governed by the law of the state of incorporation. *See Davis
& Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir.1985), *superseded
by statute on other grounds as stated in Northrop Corp. v. Triad Int'l
Mktg. S.A.*, 842 F.2d 1154 (9th Cir.1988) (per curiam). Here, the
state of incorporation is the State of Oregon. It follows that the
plaintiffs' breach-of-fiduciary-duty claim is governed by Oregon law.

The plaintiffs seek to recover economic losses from Mr. Burton.
*Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149, 159 n.6, 843
P.2d 890 (1992) ("the term economic losses" means "financial losses"
as opposed to "damages for injury to person or property"); *Simpkins v.
Connor*, 210 Or.App. 224, 230, 150 P3d 417 (2006) (same). In order to
prevail, the plaintiffs must prove that Mr. Burton owed them a
fiduciary duty because of a "special relationship." *See Bennett v.
Farmers Insurance Co.*, 332 Or. 138, 160, 26 P.3d 785 (2001); *Conway v.
Pacific University*, 324 Or. 231, 237, 240, 924 P.2d 818 (1996).
Furthermore, they must prove that he breached the duty, *Lindland v.
United Business Investments, Inc.*, 298 Or. 318, 327, 693 P.2d 20
(1984), and that his breach caused the economic losses which they seek
to recover from him. *Id.*

A fiduciary duty cannot arise absent a special relationship.
*Bennett*, 332 Or. at 160; *Roberts v. Fearey*, 162 Or.App. 546, 549-50,

ORDER - 6

986 P.2d 690 (1999).  An example of a special relationship is the one which exists between majority and minority shareholders in a close corporation.[4]  *Cf. Gangnes v. Lang*, 104 Or.App. 135, 140, 799 P.2d 670 (1990) ("The relationship that plaintiffs rely on to impose a fiduciary duty is that of co-shareholders in a close corporation.[5]") Majority shareholders in a close corporation owe fiduciary duties of loyalty, good faith, fair dealing, and full disclosure to minority shareholders.  *See, e.g, Zidell v. Zidell, Inc.*, 277 Or. 413, 418, 560 P.2d 1086 (1977); *Naito v. Naito*, 178 Or.App. 1, 20, 35 P.3d 1068 (2001).  Directors owe the same duties.  *See, e.g., Klinicki v. Lundgren*, 298 Or. 662, 683, 695 P.2d 906 (1985); *Chiles v. Robertson*, 94 Or.App. 604, 619, 767 P.2d 903, *on recons.*, 96 Or.App. 658, 774 P.2d 500, *rev. den.*, 308 Or. 592, 784 P.2d 1099 (1989).

Mr. Burton was neither a director of, nor a shareholder in, the SRSC.  He was the president.  As the plaintiffs point out, his formal role is not dispositive.  The issue is one of control.  *See, e.g., Zidell*, 277 Or. at 418 ("those in control of corporate affairs have fiduciary duties of good faith and fair dealing toward the minority shareholders"); *Naito*, 178 Or.App. at 20 n.26 ("[t]he proper focus is on those who are actually in control of the corporation, whatever their specific roles"); *Stringer v. Car Data Systems, Inc.*, 108

[4]While the SRSC may not be a close corporation, the Court will assume, for purposes of argument, that the principles that have developed in that context are applicable in this one.

[5]In *Gangnes*, the alleged breaches of fiduciary duty occurred after the plaintiffs sold their shares.  "Therefore, when the acts complained of occurred, there was no fiduciary relationship to be breached."  104 Or.App. at 140.

ORDER - 7

Or.App. 523, 527, 816 P.2d 677 ("[t]he question is whether a given shareholder or small number of shareholders has the requisite power to dictate or dominate corporate decisions"), *on recons.*, 110 Or.App. 14, 821 P.2d 418 (1991), *aff'd on other grounds* 314 Or. 576, 841 P.2d 1183 (1992). In order to prove that Mr. Burton exercised control over the SRSC's corporate affairs, the plaintiffs must demonstrate either that he was "(1) an individual who owns a majority of the shares or who, for other reasons, has domination or control of the corporation," *Locati v. Johnson*, 160 Or.App. 63, 69, 980 P.2d 173 ("*Locati I*"), *rev. den.*, 329 Or. 287, 994 P.2d 122 (1999), or that he was "(2) a member of a small group of shareholders who collectively own a majority of shares or otherwise have that domination or control." *Id.* Undoubtedly, Mr. Burton had influence with the directors; but influence is not the same as authority. In the context of a close corporation, those in authority typically have the power to remove directors and officers, *Baker v. Commercial Body Builders*, 264 Or. 614, 622, 507 P.2d 387 (1973), determine the amount of corporate dividends, *Zidell*, 277 Or. at 417, and settle lawsuits against the corporation, *Locati I*, 160 Or.App. at 69-70. There is no evidence that Mr. Burton possessed these badges of authority or any badges like them. Consequently, a reasonable jury would be unable to find that he dominated or controlled the SRSC.[6]

---

[6]As president, Mr. Burton owed duties to the SRSC, *Chiles*, 94 Or.App. at 619, and to the shareholders as a body. *Enyart v. Merrick*, 148 Or. 321, 329, 34 P.2d 629 (1934). However, the plaintiffs have failed to cite a case, and independent research has failed to uncover one, indicating that those duties were enough to establish the existence of a special relationship.

Although majority and minority shareholders in a close corporation share a special relationship, theirs is not the only circumstance in which a special relationship arises. *Bennett* is instructive. In that case, the plaintiff had been hired by Farmers Insurance Companies ("Farmers") as a district manager. 332 Or. at 142. Their respective rights and responsibilities were defined by a written contract. *Id.* at 142-43. As the years passed, Farmers allegedly demanded more and more production from him. According to him, Farmers' increasing demands gave Farmers increasing control over his financial interests. This, he alleged, gave rise to a special relationship. *Id.* at 159-60. The Supreme Court of the State of Oregon disagreed; stating that his argument misconceived the nature of a special relationship:

> The focus . . . is on whether the nature of the parties' relationship itself allowed one party to exercise control in the first party's best interests. In other words, the law does not imply a tort duty simply because one party to a business relationship begins to dominate and to control the other party's financial future. Rather, the law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf.

*Id.* at 162 (citing *Conway*, 324 Or. at 241). Having clarified the nature of a special relationship, the Oregon Supreme Court examined the plaintiff's actual relationship with Farmers. The state Supreme Court placed great weight on the terms of their contract:

> Nothing about the relationship as defined in the agreement suggested that plaintiff would relinquish control over his business or that Farmers would exercise independent judgment on plaintiff's behalf. Indeed, the agreement specifically provided that Farmers would do the opposite. As defined by the agreement, the nature of their relationship was not one in which Farmers was to step into plaintiff's shoes and to

ORDER - 9

manage his business affairs.  Accordingly, the parties were
not in a "special relationship," and Farmers did not owe
plaintiff a duty in tort.  Therefore, when Farmers began to
interfere in plaintiff's business in contravention of a
contract term, plaintiff's remedy was in contract only.[7]

*Id.* at 162-63.  *Bennett* is factually distinguishable from this case in
a number of respects.  Nevertheless, the two cases have at least one
thing in common.  Here, as in *Bennett*, the plaintiffs never asked Mr.
Burton to step into their shoes and make critical business decisions
for them.  To the contrary, it was the plaintiffs who decided which
crops to plant and when to plant them.

In sum, the plaintiffs have failed to establish that they enjoyed
a special relationship with Mr. Burton.  He neither controlled the
SRSC's corporate affairs, nor did the plaintiffs entrust him with the
authority to exercise independent judgment in the management of their
farms.  It follows that the plaintiffs cannot prevail on their claim

---

[7]The Washington Supreme Court has adopted the economic-loss
rule.  *See, e.g., Alejandre v. Bull*, 159 Wn.2d 674, 681-4, 153
P.3d 864 (2007).  Where the relationship between two parties is
governed by a contract, and one of the parties allegedly suffers
an economic loss, that party may not bring a tort claim against
the other for negligent representation.  *Id.* at 686.  Here, the
alleged misrepresentations occurred during and after discussions
concerning the sale of the plaintiffs' shares.  The discussions
never resulted in a contract.  It is unclear whether the
Washington Supreme Court will apply the economic-loss rule in a
context such as this.  At least one other state Supreme Court
probably would not.  *See Colorado Visionary Academy v. Medtronic,
Inc.*, 397 F.3d 867, 874 (10th Cir.2005) ("our review of Colorado
law leads us to the conclusion that the tort of negligent
misrepresentation can arise from ordinary, arm's length
bargaining that was expected to lead to a contractual
relationship").

ORDER - 10

against Mr. Burton for breach of fiduciary duty.  He is entitled to summary judgment on the plaintiffs' fifth cause of action.

**NEGLIGENT MISREPRESENTATION**

The parties disagree with respect to whether this claim is governed by Oregon or Washington law.  The Court need not resolve the choice-of-law dispute unless Oregon law actually conflicts with Washington law.  *See Rice*, 124 Wn.2d at 210.  An actual conflict exists when the resolution of a dispute turns upon which state's law is applied.  *Seizer v. Sessions*, 132 Wn.2d 642, 648, 940 P.2d 261 (1997).  Under Oregon law, the absence of a special relationship is fatal to a negligent misrepresentation claim.  *See, e.g., Conway*, 324 Or. at 237 ("for the duty to avoid making negligent misrepresentations to arise, the parties must be in a 'special relationship,' in which the party sought to be held liable had some obligation to pursue the interests of the other party").  Under Washington law, the absence of a special relationship may limit one's duty to disclose information during the course of a business transaction.  *Van Dinter v. Orr*, 157 Wn.2d 329, 334, 138 P.3d 608 (2006); *Colonial Imports, Inc. v. Carlton N.W., Inc.*, 121 Wn.2d 726, 732-33, 853 P.2d 913 (1993).  However, the defendants have failed to cite a case, and independent research has failed to uncover one, indicating that a special relationship is an element of a negligent representation claim in Washington.  It appears, then, that Washington law and Oregon law are in conflict on this point.  Choice of law analysis is required.

The Restatement of Conflicts lists the types of contacts that a court must consider in determining which state's law governs a tort claim.  The Washington Supreme Court quoted them in *Rice*:

"(a) the place where the injury occurred,

ORDER - 11

    (b) the place where the conduct causing the injury occurred,
    (c) the domicil, residence, nationality, place of
    incorporation and place of business of the parties, and
    (d) the place where the relationship, if any, between the
    parties is centered."

124 Wn. 2d at 213 (quoting Restatement, *supra*, § 145(2)).  Of the
preceding contacts, only one links the plaintiffs' allegations to
Oregon; namely, the fact that Oregon is the place where the SRSC is
incorporated.  All of the other contacts link the plaintiffs'
allegations to Washington or, to a lesser extent, Idaho.  For example,
the plaintiffs' farms are in Washington.  They allegedly sustained
economic losses in Washington.  An important meeting occurred in
Washington.  Mr. Burton's alleged misrepresentations and omissions
occurred in Washington or Idaho.  Finally, the SRSC's principal place
of business is in Idaho.  Given the balance of contacts, Washington
has the most significant relationship with the events upon which the
plaintiffs' negligent misrepresentation claim is based.  Accordingly,
the Court will apply Washington law.

    The plaintiffs' negligent misrepresentation claim is based upon
the statements that Mr. Burton made during the January 5th meeting in
Prosser and his failure to inform the plaintiffs that, on February
17th, the executive committee rejected their respective offers to sell
their shares in the SRSC.  Given the elements of a negligent
misrepresentation claim,[8] the plaintiffs' allegations raise at least

---

[8]The plaintiffs must prove by clear, cogent, and convincing
evidence that they justifiably relied upon false information
which Mr. Burton negligently supplied and that the false
information was the proximate cause of the economic losses they
allege.  *See Lawyers Title Ins. Corp. v. Baik*, 147 Wn.2d 536,
545, 55 P.3d 619 (2002) (citations omitted).

ORDER - 12

two issues.  The first is whether Mr. Burton had a duty to inform the plaintiffs of the results of the February 17th executive committee meeting.  The second is whether they justifiably refrained from planting sugar beets based upon Mr. Burton's alleged statements at the January 5th meeting and his subsequent silence.

The Washington Supreme Court has adopted § 551 of the Restatement (Second) of Torts (1977).  *Colonial Imports*, 121 Wn.2d at 731. Subsection 551(2) states in part:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
> . . . .
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so[.]

On January 5th, Mr. Burton met with the Sunheaven Farms partners in Prosser.  He allegedly pressured them to sell their shares in the SRSC and cease growing sugar beets.  They assumed that he would not have made such a proposal unless he had the blessing of the executive committee.  As a result, they made offers of sale to the executive committee on January 17th.  While Mr. Burton's email of January 24th was not encouraging, neither did it state that the executive committee had rejected their offer.  An objective person in their position reasonably could have construed the absence of a response as an indication that the executive committee was still considering their offer.  On February 17th, Mr. Burton learned that the executive committee was unwilling to accept the partners' offers and did not intend to make a counteroffer.  This meant that the plaintiffs had to plant sugar beets during the Spring of 2005 in order to remain in good standing in the SRSC.  Any statement to the contrary that Mr. Burton

ORDER - 13

made prior to the executive committee's decision became misleading on February 17th even if originally made in good faith.  Thus, he had a duty to notify the plaintiffs of the executive committee's decision.

The next issue is whether the plaintiffs justifiably refrained from planting sugar beets during the Spring of 2005 based upon the statements Mr. Burton made at the January 5th meeting and his silence after the February 17th executive committee meeting.  Viewing these circumstances in the light most favorable to the plaintiffs, a reasonable jury could find that Mr. Burton created the false impression that the executive committee was interested in purchasing their shares and that it was considering their offers.  By itself, however, this impression was not enough to justify the plaintiffs' decision to refrain from planting sugar beets during the Spring of 2005.  The plaintiffs must show that they reasonably believed, based upon Mr. Burton's alleged misrepresentations, that the executive committee was willing to accept the terms that they offered on January 17th.  *Cf. Hansen v. Transworld Wireless TV-Spokane, Inc.*, 111 Wn. App. 361, 370, 44 P.3d 929 (2002) ("[f]or a contract to exist, there must be mutual assent, which generally takes the form of offer and acceptance"), *review denied*, 148 Wn.2d 1004 (2003).  The evidence presented by the plaintiffs falls well short of warranting such a belief.  Mr. Burton never said or did anything after January 17th indicating that the executive committee was willing to accept the plaintiffs' terms and that they need not plant sugar beets during the Spring of 2005.  To the contrary, his January 24th email to Mr. Walker was cautious.  He warned Walker that the Sunheaven Farms partners' offers to sell their respective shares might "be a next year deal."  The partners probably received a copy of Mr. Burton's email, together

ORDER - 14

with Mr. Walker's pessimistic interpretation, on February 25th. Neither they nor Mr. Walker contacted Mr. Burton thereafter and asked him about the status of the January 17th offers.  Persons other than Mr. Burton may have represented that acceptance was likely and that the plaintiffs need not plant during 2005,[9] but not he.  The worst that can be said about Mr. Burton is that he falsely represented that the executive committee was considering the plaintiffs' offers.

As it turned out, the executive committee never responded to the January 17th offers.  An offeree's failure to respond does not constitute acceptance absent exceptional circumstances.  111 Wn. App. at 370; Restatement (Second) of Contracts § 69 (1981).  There is nothing exceptional about this case.  The Sunheaven Farms partners knew that the executive committee might reject their respective offers.  Indeed, they addressed this very contingency in their memorandum.  Three of them said that they intended to plant sugar beets during 2005 if the executive committee did not purchase their shares on the terms offered.[10]  Mr. Burton never encouraged the plaintiffs to abandon this course of conduct.  Nor did he encourage them to think that the executive committee's post-offer silence was tantamount to acceptance of their terms.  Consequently, a reasonable jury would be unable to find that the plaintiffs justifiably refrained from planting sugar beets during 2005 based upon Mr. Burton's alleged misrepresentations.  He is entitled to summary judgment on the plaintiffs' sixth cause of action.

[9](Second Amended Complaint, ¶ 38, p. 13.)

[10]The other two partners said they wanted to wait three years before selling their shares.

ORDER - 15

1

**IT IS HEREBY ORDERED:**

2

Ralph Burton's motion for summary judgment (**Ct. Rec. 129**) is

3

granted.  The plaintiffs' fifth and sixth causes of action -- *i.e.,*

4

their claims against Mr. Burton for breach of fiduciary duty and

5

negligent misrepresentation -- are dismissed with prejudice.

6

**IT IS SO ORDERED.**  The District Court Executive is hereby

7

directed to enter this order and furnish copies to counsel.

8

**DATED** this ___9th___ day of November, 2007.

9

10
        ____s/ Fred Van Sickle_____
                 Fred Van Sickle
          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 16