UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BYBEE FARMS, LLC, et al.,

            Plaintiffs,

        v.

SNAKE RIVER SUGAR COMPANY, et al.,

            Defendants.

No. CV-06-5007-FVS

TENTATIVE CONCLUSIONS RE DEFENDANTS' COUNTERCLAIMS AND PLAINTIFFS' FOURTH CLAIM

**THIS MATTER** comes before the Court based upon cross motions for summary judgment.  The plaintiffs are represented by Thomas Banducci; the defendants by J. Walter Sinclair.  The following are the Court's tentative conclusions regarding the defendants' counterclaims and the plaintiffs' fourth claim.

    **BACKGROUND**

The Snake River Sugar Company ("SRSC") is an agricultural cooperative that is organized under the laws of the State of Oregon. Article III of the Second Amended and Restated Articles of Incorporation (hereinafter "Articles") lists the Cooperative's purposes and powers:

> Section 1. <u>Purposes</u>. The purposes of this Cooperative shall be to receive, handle, manufacture, process, and market the sugarbeets and other agricultural products of its members and other producers; to purchase, handle, and distribute agricultural supplies and equipment to its members and other patrons; to perform any and all related services for its members and other patrons; and to engage in

TENTATIVE CONCLUSIONS - 1

any other lawful purpose.  This Cooperative shall be operated on a cooperative basis for the mutual benefit of its members and patrons.

Section 2. <u>Powers</u>. This Cooperative shall have all the powers, privileges and rights conferred on cooperative corporations by the laws of the State of Oregon, including without limitation all powers necessary or convenient to effect any or all of the purposes for which this Cooperative is organized.

(Article III, §§ 1,2, p. 1.)

Each of the three plaintiffs -- Bybee Farms LLC, Duane Munn & Sons Farms LLC, and Neal Bybee -- owns one share of the Cooperative's Common Stock and multiple shares of its Patron Preferred Stock.  The plaintiffs paid $400 per share of Patron Preferred Stock.  Under Article IV, ownership of patron preferred stock confers both a right and a responsibility to produce sugarbeets:

Section 3. <u>Patron Preferred Stock</u>.
. . . .
Paragraph 2. *Rights*.
. . . .
(b) Delivery Rights or Quota. The holders of Patron Preferred Stock shall be entitled and obligated to deliver the sugarbeets from one (1) acre of land per share of Patron Preferred Stock held in accordance with the rules and regulations established by the Board of Directors governing delivery rights and quota as exists from time to time.

(Article IV, § 3, ¶ 2(b), p. 3.)

Each plaintiff has executed a Grower Agreement.  Like the articles, it confers both a right and a responsibility to grow and deliver sugarbeets:

1. <u>Delivery of Sugarbeets</u>.  The Grower owns and has the growing rights to shares of Patron Preferred Stock of the Cooperative (here-in [sic] called "Quota") as reflected on the records of the Cooperative.  Grower recognizes such Quota as the right and obligation to grow, or cause to be grown, one (1) acre of sugarbeets per share for deliver to

TENTATIVE CONCLUSIONS - 2

the Cooperative each crop year.

(Grower Agreement at 1.)

The Grower Agreement establishes penalties in the event a member does not fulfill his contractual obligations.  Should he fail to deliver his quota of sugarbeets, he must compensate the SRSC:

> 7. <u>Failure to Plant, Replant or Deliver Sugarbeets</u>.  In the event Grower does not meet any of the obligations specified in paragraph 5, and such failure is not excused as provided by Paragraph 6, Grower agrees to pay to the Cooperative a cash sum based upon the LLC's most current projection of the resulting decrease in the LLC's distributable cash as defined in the LLC's Company Agreement, computed on a per acre basis ("Distributable Cash Per Acre Decrease").  **In the event Grower has failed to plant or deliver all or any portion of the Grower's full Quota, the Grower will pay to the Cooperative 100% of the Distributable Cash Per Acre Decrease for each acre which was not planted or delivered**.  In the event Grower initially planted, but failed to replant all or any portion of Grower's full quota, the Grower will pay to the Cooperative 80% of the Distributable Cash Per Acre Decrease for each acre which was not replanted.  **Grower recognizes that the Cooperative and its members will suffer damages from lost production, that such amount is difficult to ascertain with certainty, and that the above formula is a fair and reasonable method to determine damages.**

*Id.* at 2 (emphasis added).  The parties typically refer to the above-described penalty as a "make-whole payment."  Should a delinquent grower fail to submit his make-whole payment, he forfeits his shares of Patron Preferred Stock:

> 8. <u>Agreement to Pay Distributable Cash Per Acre Decrease or the Reversion of Shares</u>.  Grower agrees to pay the Cooperative the Distributable Cash Per Acre Decrease owing to the Cooperative pursuant to Paragraph 7 within 90 days after Grower's Paragraph 7 failure, but no later than the February 1 following such failure, and to take all reasonable steps to pay such amount, including the sale of Patron Preferred Stock.  **In the event Grower does not pay**

TENTATIVE CONCLUSIONS - 3

**the Distributable Cash Per Acre Decrease within said time period, Grower agrees that Grower's Patron Preferred Stock in an amount equivalent to the number of acres to which said payment failure applies shall immediately revert and transfer to the Cooperative without any further action of Grower.** The Cooperative agrees to accept the reverted shares as consideration for the discharge of the unpaid Distributable Cash Per Acre Decrease and Grower agrees that such consideration is fair and reasonable.

*Id.* (emphasis added).

In the United States, the production of sugar is regulated by the federal government. By the end of 2003, the SRSC was producing more sugarbeets than its sister company, The Amalgamated Sugar Company ("TASCO"), could process and sell profitably. Consequently, the SRSC's Board of Directors decided to reduce the number of acres of sugarbeets that each grower could plant. During 2004, the Board imposed a 5% reduction. During 2005, the Board imposed a 16% reduction. Individual growers were not asked to approve the reductions. As a practical matter, the reductions meant that the Cooperative did not allow growers to "deliver the sugarbeets from one (1) acre of land per share of Patron Preferred Stock" during either 2004 or 2005. Instead, during 2004, the Cooperative allowed them to deliver the sugarbeets from approximately .95 acre of land per share of Patron Preferred Stock. During 2005, the Cooperative allowed them to deliver the sugarbeets from approximately .84 acre of land per share.

As explained in more detail elsewhere, the plaintiffs did not plant sugarbeets during 2005 and 2006. Relying upon paragraph 7 of the Grower Agreement, the Board demanded payment of $75.00 for each acre of land that the plaintiffs failed to plant. When they did not

TENTATIVE CONCLUSIONS - 4

submit the make-whole payments demanded by the Board, it forfeited their shares of Patron Preferred Stock pursuant to paragraph 8.

**DEFENDANTS' COUNTERCLAIMS**

The defendants have filed counterclaims against both Bybee Farms LLC and Duane Munn & Sons Farms LLC.  The defendants seek declaratory judgments upholding the forfeiture of their shares of Patron Preferred Stock.  The plaintiffs move for summary judgment.

A. Authority to Impose Reductions

The Articles arguably guarantee each member of the SRSC the right to "deliver the sugarbeets from one (1) acre of land per share of Patron Preferred Stock[.]"  (Article IV, § 3, ¶ 2(b), p. 3.[1])  During both 2004 and 2005, the Board unilaterally limited the number of acres of sugarbeets that the SRSC's members could plant.  The plaintiffs argue that the acreage reductions imposed by the Board were ultra vires.  Under the laws of the States of Washington, Oregon, and Idaho, a shareholder may seek to enjoin an ultra vires corporate action.  RCW 23B.03.040; ORS 60.084; I.C. § 30-1-304.[2]  However, the plaintiffs are

---

[1]Paragraph 2(b) states, "The holders of Patron Preferred Stock shall be entitled . . . to deliver the sugarbeets from one (1) acre of land per share of Patron Preferred Stock held in accordance with the rules and regulations established by the Board of Directors **governing delivery rights and quota as exists from time to time.**"  (Emphasis added.)  The last clause of paragraph 2(b) seems to suggest that the one-acre-of-land-per-share provision is not inflexible; that the Board is authorized to adopt rules modifying "delivery rights and quota[.]"

[2]All three states have adopted the same section of the Revised Model Business Corporation Act.  Since all three statutes are substantially the same, local law applies.  *Erwin v. Cotter Health Centers*, 161 Wn.2d 676, 692, 167 P.3d 1112 (2007).

not seeking to enjoin the Board's allegedly ultra vires acreage-reduction decisions of 2004 and 2005.  They are seeking to prevent the SRSC from invoking paragraph 8 of the Grower Agreement.  Even assuming the Board's acreage reductions were ultra vires, the SRSC clearly is authorized to enforce Grower Agreements.  (Article III, § 2, p. 1.)  Thus, the act that the plaintiffs seek to prevent is not ultra vires.  The plaintiffs' are not entitled to summary judgment on this issue.[3]

   B. Antecedent Breaches

   The plaintiffs allege that the SRSC breached the relevant Grower Agreements by unilaterally reducing production of sugarbeets during 2004 and 2005.  According to the plaintiffs, the Board's decisions infringed their contractual right to grow "one (1) acre of sugarbeets per share [of Patron Preferred Stock]."  (Grower Agreement at 1.)  In Washington (as in other states), "[a] material breach suspends the injured party's duties until the breaching party cures the default."  *Bailie Comm., Ltd. v. Trend Business Systems*, 53 Wn. App. 77, 81, 765

_____

   [3]"The term 'ultra vires' . . . is used to describe corporate transactions which are outside the objects for which the corporation was created[.]"  *Twisp Mining & Smelting Co. v. Chelan Mining Co.*, 16 Wn.2d 264, 293-94, 133 P.2d 300 (1943).  Given the purposes for which the SRSC was incorporated, and the powers with which it is endowed, an argument can be made that the SRSC has authority to regulate the number of acres of sugarbeets that its members may plant.  Granted, Section 3 of Article IV may limit the SRSC's authority.  *But see supra* note 1.  Nevertheless, the existence of a limit on the SRSC's authority does not necessarily mean that the Board's acreage reductions were ultra vires.  *Cf. Hartstene Pointe Maintenance Ass'n v. Diehl*, 95 Wn. App. 339, 345, 979 P.2d 854 (1999) (distinguishing between a challenge to the existence of corporate authority and a challenge to the manner in which a corporation exercises its authority).

TENTATIVE CONCLUSIONS - 6

P.2d 339 (1988) (citing *Restatement (Second) of Contracts* §§ 237, 241 (1981)).[4]  Consequently, if the Board's acreage reductions materially breached the relevant Grower Agreements, the plaintiffs may have been relieved of their duty to plant sugarbeets.

Whether a breach is material is a question of fact.  *TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc.*, 140 Wn. App. 191, 209, 165 P.3d 1271 (2007).  Section 241 of the *Restatement* lists five circumstances that are relevant to a determination of materiality:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Restatement, supra*, § 241.[5]

---

[4] The Grower Agreement contains a choice of law clause.  The Court need not decide whether the clause is effective unless there is an actual conflict between Washington and Idaho law. *Erwin*, 161 Wn.2d at 692.  Although the Idaho Supreme Court may not have adopted sections 237 and 241, it is well established that "one cannot declare a forfeiture of a contract where he himself is materially in default."  *Barnard & Sons, Inc. v. Akins*, 109 Idaho 466, 708 P.2d 871 (1985).

[5] The Washington Court of Appeals has approved use of the above-quoted factors.  *TMT Bear Creek Shopping Ctr., Inc.*, 140 Wn. App. at 209 and n.8.

TENTATIVE CONCLUSIONS - 7

The parties disagree with respect to whether the 2004 and 2005 acreage reductions deprived the plaintiffs of benefits.  The plaintiffs point out that they were not allowed to plant one acre of sugarbeets for each share of Patron Preferred Stock they held.  In response, the defendants submit that the acreage reduction was necessary to keep the SRSC operating profitably.

Assuming, for purposes of argument, that the acreage reductions deprived the plaintiffs of benefits, their loss was small when compared to the payments which they received from the SRSC for the sugarbeets they delivered.  Furthermore, the plaintiffs may bring an action for damages to recover any benefits they lost as a result of the SRSC's alleged breach.  A damage award should fully compensate them.

"A material failure by one party gives the other party the right to withhold further performance as a means of securing his expectation of an exchange of performances."  *Restatement, supra*, § 241, comment e, at 241.  The plaintiffs planted sugarbeets during 2004 despite the Board's decision to impose a 5% acreage reduction.  The SRSC paid the plaintiffs for the sugarbeets they delivered.  There is no evidence that, as the 2005 planting season approached, the plaintiffs thought that the SRSC was breaching the Grower Agreements by limiting production.  Nor is there any evidence that the plaintiffs refrained from planting sugarbeets during 2005 in order to secure their expectations under the Grower Agreements.  To the contrary, it is undisputed that their decision to refrain from planting was based upon entirely unrelated considerations.  Furthermore, if the plaintiffs had planted sugarbeets during 2005, there is every reason to think the SRSC would have paid them for the sugarbeets they delivered.  In other

TENTATIVE CONCLUSIONS - 8

words, the plaintiffs' expectations under their respective Grower
Agreements were reasonably secure during 2005 despite the acreage
reductions.  The plaintiffs failure to plant during 2005 did not
increase their security.  If anything, it undermined their security.
*See id.* ("To the extent that [the injured party's] expectation is
already reasonably secure, in spite of the failure [of the breaching
party to perform], there is less reason to conclude that the
[breaching party's] failure is material.").

The final circumstance is the presence or absence of good faith
or fair dealing.  Although a party to a contract may, in good faith,
fail to perform a duty and breach the agreement, "[t]he extent to
which the behavior of the party failing to perform . . . comports with
standards of good faith and fair dealing is . . . a significant
circumstance in determining whether the failure is material."
*Restatement, supra*, § 241, comment f, at 241-42.  The Board claims it
imposed acreage reductions in an effort to maintain the financial
health of the Cooperative.  Moreover, the Board did not single out the
plaintiffs; the reductions applied to all SRSC sugarbeet growers.

No one of the preceding factors is dispositive in determining
whether the SRSC's alleged breaches of the Grower Agreements were
material.  Upon weighing all of the factors, a rational jury could
find that the SRSC's alleged breaches were not material.  By way of
illustration only, the jury might be persuaded by evidence that,
during 2004 and 2005, the plaintiffs did not perceive the acreage
reductions as breaches of contract; did not think that the reductions
threatened their expectations under the Grower Agreements; and did not
refrain from planting in order to secure performance by the SRSC.  It
follows that the plaintiffs are not entitled to summary judgment on

this issue.[6]

C. Liquidated Damages

The parties agree that paragraph 8 of the Grower Agreements -- *i.e.*, the share-forfeiture provision -- is a liquidated damages clause.  The Washington Supreme Court has adopted a two-part test "to determine whether a liquidated damages clause is enforceable.  First, the amount fixed must be a reasonable forecast of just compensation for the harm that is caused by the breach.  Second, the harm must be such that it is incapable or very difficult of ascertainment." *Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 559, 730 P.2d 1340 (1987) (citations omitted).  The preceding test is applied as of the time the parties formed the contract. *Watson v. Ingram*, 124 Wn.2d 845, 851, 881 P.2d 247 (1994).  In other words, it is a "prospective" test. *Id*. at 850.

The liquidated-damages test adopted by the Idaho Supreme Court differs in at least one important respect.  In Idaho, "parties to a contract may agree upon liquidated damages in anticipation of a breach, in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract **bear a reasonable relation to actual damages**." *Graves v. Cupic*, 75 Idaho 451, 456, 272 P.2d 1020, 1023 (1954) (emphasis added).  By considering the non-breaching party's actual damages, the Idaho test is at least partially retrospective in nature. *See Watson*, 124 Wn.2d at 850 ("The question before this court is whether this test is to be applied as of

---

[6]Even viewing the evidence in the light most favorable to the plaintiffs, it is difficult to see how a rational could find that the SRSC's alleged breaches were material.

the time of contract formation (prospectively) or as of the time of trial (retrospectively).").

The parties have not addressed the apparent conflict between Washington and Idaho law. They simply assume that the choice-of-law clause in the Grower Agreements governs; and they may be correct. *Erwin*, 161 Wn.2d at 694-700. In any event, since neither side contests the application of Idaho law, the Court will employ the *Graves* test.

The plaintiffs bear the burden of proving that the forfeiture provision in paragraph 8 is unenforceable. *Magic Valley Truck Brokers, Inc. v. Meyer*, 133 Idaho 110, 117, 982 P.2d 945, 951 (Ct.App.1999). They do not appear to dispute that, when they executed their respective Grower Agreements, an accurate determination of damages would have been difficult. Instead, the plaintiffs focus on the second prong of the *Graves* test; arguing that the forfeiture of their shares of Patron Preferred Stock does not bear a reasonable relationship to the damages that the SRSC actually sustained as a result of their failure to grow sugarbeets during 2005 and 2006.[7]

The plaintiffs submit that the price which they paid for their shares of Patron Preferred Stock -- $400.00 per share -- represents the shares' minimum value. In the plaintiffs' opinion, the value of their shares vastly exceeds the SRSC's actual damages. As they point

---

[7]It is questionable whether the plaintiffs could make this argument under Washington law. *See Watson*, 124 Wn.2d at 851 ("The prospective approach concentrates on whether the liquidated sum represents a reasonable prediction of the harm to the seller if the buyer breaches the agreement, and ignores actual damages except as evidence of the reasonableness of the estimate of potential damage.").

TENTATIVE CONCLUSIONS - 11

out, one share of Patron Preferred Stock represents one acre of sugarbeets. (Grower Agreement at 1 (an SRSC member has a right to grow "one (1) acre of sugarbeets per share [of Patron Preferred Stock]").) The Board demanded $75.00 for each acre of sugarbeets that they did not plant. Thus, according to the plaintiffs, the SRSC's actual damages are $75.00 per share. If the values proposed by the plaintiffs are reasonably accurate, the SRSC has reaped an enormous windfall by forfeiting the plaintiffs shares of Patron Preferred Stock.

The SRSC challenges both of the assumptions upon which the plaintiffs' argument is based. To begin with, the SRSC submits that the price which the plaintiffs paid for their shares of Patron Preferred Stock was an arbitrary number. In the SRSC's opinion, the $400.00-per-share figure does not represent the actual value of the shares at the time of purchase. Rather, according to the SRSC, the figure is simply the price the plaintiffs had to pay for the privilege of joining the SRSC and obtaining the benefits that membership conferred. Furthermore, the SRSC argues that its actual damages are substantially more than the $75.00 per acre it demanded as a make-whole payment. That figure, says the SRSC, is hundreds of dollars less per share than the damages the Cooperative actually sustained as a result of the plaintiffs failure to grow sugarbeets during 2005 and 2006. The SRSC argues that more realistic damage figures are $465 per share for 2005 and $554 per share for 2006.

It is true, as the SRSC argues, that the valuation evidence presented by the plaintiffs is far from overwhelming. They are not entitled to summary judgment as the record now stands. Nevertheless, the fact that the SRSC sold Patron Preferred Stock for $400 per share

TENTATIVE CONCLUSIONS - 12

is some evidence of the shares' value.  Similarly, the fact that the SRSC demanded $75.00 per acre as a make-whole payment is some evidence of the Cooperative's actual damages.  The SRSC vigorously disputes the validity of the plaintiffs' valuation evidence, and the SRSC has submitted valuation evidence of its own.  The dispute between the parties is material to the outcome of the case.  If the plaintiffs are correct, the liquidated damages clause is unenforceable.  If the SRSC is correct, not only is the clause enforceable, but the plaintiffs have benefitted financially from forfeiture, as opposed to paying damages.  In order to resolve the dispute, the Court must make credibility determinations.  It would be inappropriate for the Court to attempt to do so on a "paper" record.  An evidentiary hearing or trial is necessary.

**PLAINTIFFS' CONVERSION CLAIM**

The plaintiffs' fourth cause of action is a claim for conversion. They allege that the SRSC wrongfully forfeited their shares of Patron Preferred Stock under paragraph 8 of the Grower Agreements.  In essence, this is the mirror image of the counterclaim discussed in the preceding section.  For the same reasons that the Court cannot grant the plaintiffs' motion for summary judgment on the defendants' counterclaim, the Court cannot grant the defendant's motion for summary judgment on the plaintiffs' conversion claim.

**TENTATIVE CONCLUSIONS**

1. The plaintiffs may not assert the ultra vires doctrine as a shield to the SRSC's enforcement of paragraph 8 of the Grower Agreements.

2. Genuine issues of material fact exist with respect to whether the SRSC's 2004 and 2005 acreage reductions constitute material,

TENTATIVE CONCLUSIONS - 13

antecedent breaches of the Grower Agreements.

   3. Genuine issues of material fact exist with respect to both the value of the plaintiffs' shares of Patron Preferred Stock and the extent of the SRSC's actual damages as a result of the plaintiffs' failure to grow sugarbeets during 2005 and 2006.

**CONCLUSIONS ARE TENTATIVE**

   The conclusions set forth above are tentative.  After listening to oral argument, the Court may modify or abandon some or all of them. Since this is not an order, the Court will not consider a motion for reconsideration.  Nor will the Court consider supplemental evidence or memoranda.  The record is complete for purposes of dispositive motions.

   **THE DISTRICT COURT EXECUTIVE** is hereby directed to enter the Court's tentative conclusions and furnish copies to counsel.

   **DATED** this ___21st___ day of July, 2008.


                    ___s/Fred Van Sickle___
                       Fred Van Sickle
               Senior United States District Judge

TENTATIVE CONCLUSIONS - 14